UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CENTURION SILVER, LLC,
a New Mexico Limited Liability
Company, et al.,

     Plaintiffs,

     v.                                  CIV. NO. 07-1091 RB/ACT

SILVERBERG DEVELOPMENT
CORPORATION, a California
corporation,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Silverberg Development Corporation's ("SDC") Motion to Compel filed April 15, 2008 [Doc. 43]. SDC is seeking an order authorizing it, pursuant to Fed.R.Civ.P. 30(b)(1), to compel the deposition of the Plaintiffs through its managing agent, Tom Hazelrigg ("Tom"). Plaintiffs Centurion Silver, LLC, Centurion Southwest, LLC and Centurion Pacific, LLC ("Centurion") assert that Tom is not a managing agent, but merely a broker who assisted the parties in financing the deal. The issue to be determined by the Court is whether Tom is a managing agent subject to a deposition pursuant to Fed.R.Civ.P. 30(b)(1). *Background.*

In June of 2007, SDC entered into three Purchase and Sale Agreements ("PSA") with Centurion to buy four office buildings in Albuquerque: Silver Square, Compass Bank, Bank of the West and Two Park Central Tower. On October 24, 2007, Centurion terminated the three agreements after SDC declined to commit that it would also close on the purchase of the other two buildings as a condition to closing on the purchases of the Silver Square and Compass Bank. At

issue in this case is whether the three PSAs, as amended in the second amendment, required SDC to close on the purchase of all four buildings if it wished to close on the purchase of any of them.

Warren Silverberg ("Silverberg") is the President of SDC. In response to an interrogatory, Aaron Hazelrigg ("Aaron") states he, individually and in his capacity as Trustee of the Aaron Hazelrigg Revocable Trust, owns the majority interest in Centurion. Jay Hazelrigg is the brother of Tom. Tom is the father of Aaron.

The following facts regarding Tom are undisputed:

Tom loaned Aaron $2,007,084.87 for the purchase of the subject buildings. In connection with the 2004 purchase of the Bank of the West building, Tom signed an affidavit stating he had been an investor in Centurion Pacific since its formation and had provided the equity required to purchase Bank of the West and Two Park Central Tower.

Tom is a principal of Centurion Financial Group ("CFG"). The CFG website describes Tom as one of its executives and states that one of its divisions is Centurion Properties. Centurion Properties owns the subject buildings.

Centurion's real estate broker conveyed purchase offers for the buildings in question to both Tom and Aaron.

In May of 2007, when SDC expressed interest in the buildings, it was Tom who responded that demonstration of financial wherewithal was needed to proceed.

In early June 2007, Tom participated in reviewing and revising the PSAs including participating in telephone conferences with Centurion's transaction counsel. Specifically on June 8, 2007, transaction counsel wrote SDC saying "here are some comments on the form purchase

agreement, resulting from my review and a discussion with Aaron and Tom Hazelrigg." Silverberg Affidavit, Exh. 6.

Tom executed the real estate commission agreement dated April 15, 2008, for Centurion, signing as "General Partner" of Centurion Pacific, Southwest and Silver.[1]

Tom handled all the negotiations of the First Amendment to the Silver Squares and Compass Bank PSAs and the crucial Second Amendment directly with SDC's President, Warren Silverberg.

On June 19, 2007, SDC wrote an e-mail to Tom regarding Capmark Bank and the rate lock.

On July 20, 2007, Tom wrote Silverberg stating that there may be another way to solve the Capmark situation in that "[w]e may have a buyer for the 'B' piece." Silverberg Affidavit, Exh. 10. On July 23, 2007, SDC wrote an e-mail to Tom attaching the second amendments to the PSA's and discussing the meaning of the second amendments. Aaron received these amendments by e-mail from Tom and "quick" signed them pursuant to Tom's instructions.

Tom was "in charge" of the rate lock for the buildings and advanced the funds.

In an e-mail between employees of Stewart Title, the escrow officer said that Tom instructed the escrow officer that he would be "the main point person" on the transactions.

Tom offered to pay the deposit if SDC committed to finance Bank of the West with Capmark Bank.

Tom offered to pay an additional $50,000 fee to Capmark to expedite the loan assumption approval decision.

---

[1]The Court is aware that Centurion disputes the circumstances surrounding this agreement and asserts Tom signed only because Aaron was out of town and that Tom was not a General Partner of Centurion.  However, there is no dispute as to the document described above.

Tom dictated to Centurion's real estate broker that there would be no publicity in connection with the closing of the purchase of the buildings.

Tom and Aaron agreed to personally guarantee lease payments that Centurion would make to SDC.

Tom stated in his September 30, 2007, financial statement provided to Capmark that he owns 57% of Centurion's entities.[2]

*Legal standard and discussion.*

Federal Rule of Civil Procedure 30(b)(1) authorizes a party to compel the deposition of an adversary corporation or other business entity through one of its officers, directors, or managing agents which the party names in its deposition notice. 7 *Moore's Federal Practice*, 3rd. edition, §30.03[2] at 30-18 (3d. ed. 2008). In determining whether a person[3] is a "managing agent" of a

---

[2] The Court is aware that Centurion responded in discovery that only Aaron and Jay Hazelrigg and for a short period of time, a Patrick McCourt, had any ownership interest in Centurion. However, the fact remains that Tom's financial statement dated September 30, 2007, shows otherwise.

[3] A managing agent does not necessarily have to be an employee of the business entity. *Schindler Elevator Corp v. Otis Elevator Company*, 2007 WL 1771509 (S.D.New York 2007)(finding the inventor of the patent at issue a managing agent); *Dubai Islamic Bank v. Citibank*, 2002 WL 1159699 (S.D.N.Y. 2002)(finding independent contractors can be managing agents for purposes of Rule 30) citing *Calgene, Inc. v. Enzo Biochem, Inc.*, 1993 WL 645999, at *8 (E.D. Cal. August 23, 1993) (holding that consultant and advisory board member who identified with interests of company and who had "power regarding the subject matter of the litigation" was managing agent); *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 351 (N.D. Ohio 1999)("In any event, it is clear that the deponent need not have a formal association with the corporation to be deemed its managing agent...").

corporation most courts follow a three-prong test.[4]  *Reed Paper Co. v. Proctor & Gamble Distrib. Co.*, 144 F.R.D. 2, 4 (D. Me. 1992).  The three factors are:

> 1. The individual should possess general powers to exercise judgment and discretion in corporate matters.

Tom exercised this type of authority when communicating with Centurion's real estate broker and signing the real estate commission agreement.  He established conditions for purchase offers and instructed the broker not to publicize the sale of the buildings.  He was "in charge" of the rate lock and indicated to the escrow officer he was the main point person.

> 2. The individual should be a person who can be relied on to give testimony, at the employer's request, in response to the demand of the examining party.

Although Tom's current relationship with Centurion has not been established, Centurion listed their Albuquerque headquarters as his address in the Joint Status Report (Doc. 14).  It is also clear that Tom's interests are aligned with Centurion and he has been identified as a witness who will testify on their behalf.

> 3. The individual should be a person who can be expected to identify with the interests of the corporation.

*In re Honda Am. Motor Co., Inc.*, 168 F.R.D. 535, 540 (D. Md. 1996) ("[t]he paramount test is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's").  There is no doubt that Tom will identify with the interests of Centurion.  He is

---

[4] Centurion relies on *Stone v. Morton International, Inc.,* 170 F.R.D. 498 (D. Utah 1997).  In *Stone*, the court required exhaustion of Rule 30(b)(6) prior to a deposition of a specifically named officer, director or managing agent.  It appears that Stone is a minority of one.  Moreover, nothing in Fed.R.Civ.P. 30(b) requires exhaustion.  Rather, Fed.R.Civ.P. 30(b)(6) specifically states that "[t]his paragraph (6) does not preclude a deposition by any other procedure allowed by these rules." *Moore v. Pyrotech Corp.*, 137 F.R.D. 356, 357 (D. Kan. 1991) (stating that Fed.R.Civ.P. 30(b)(1) and 30(b)(6) are two alternative methods to obtain the deposition of a corporation).

Aaron's father. He is an executive of CFG, one of whose divisions owns the building in question. He lent Aaron over two millions dollars for the purchase of the buildings. He offered to pay an additional $50,000 to expedite the 2007 loan process and personally guaranteed Centurions' lease obligations to SDC. He has been an investor in Centurion Pacific since its inception and provided the equity required to purchase Bank of the West. In his September 30, 2007, financial statement provided to Capmark, he claims to own a 57% interest in Centurion.

Two other factors are sometimes considered by the courts:

4. Whether any persons are employed by the corporation in positions of higher authority than the individual designated in the area of which information is sought by the deposition.

5. The general responsibilities of the individual with respect to the matters involved in the litigation.

Tom was responsible for the circumstances of the refinancing and assumption of the loans for the buildings. He was "in charge" of the rate lock and informed Centurion's escrow officer he was the "main point person" for the transactions. He even offered another lender an additional $50,000 to expedite the loan assumption process. He worked with Silverberg on the second amendment to the PSAs which is a critical issue in this case. Aaron admitted under oath, he did not read these amendments before signing and instead, signed them pursuant to Tom's request.

Finally, Centurion asserts that SDC can just subpoena Tom and depose him when they are deposing other witnesses in Seattle, Washington. SDC asserts that it has attempted several times to serve Tom at his place of business and at his home but he cannot be found.

When the issue is whether an individual is a managing agent for discovery purposes, the burden is on the person or entity seeking the discovery.

> [It is a] "modest" burden since the movant need only demonstrate " 'that there is at least a close    question' as to whether the witness is a managing agent." Boss Mfg. Co. v. Hugo Boss AG, 1999 WL 20828, at *4 (S.D.N.Y. Jan. 13, 1999) (citing United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 413 (S .D.N.Y.1994)). Accord Dubai Islamic Bank v. Citibank, N.A., 2002 WL 1159699, at *3-4 (S.D.N.Y. May 31, 2002). Moreover, for purposes of this analysis all doubts should be resolved in favor of the discovering party. See id. at *4; Afram Lines, 159 F .R.D. at 413.

*Malletier v. Dooney & Bourke, Inc.*, 2006 WL 3476735 at *14 (S.D.N.Y. 2006).[5]  *Sugarhill Records, Ltd v. Motown Record Corp.*, 105 F.R.D. 166, 170-171 (S.D.N.Y. 1985) (citing all five factors and ruling that burden of proof is on person seeking deposition but that in close questions of employee status, issue should be resolved in favor of examining party "since the issue of whether the witness' testimony can be used as a statement by the defendant still remains to be resolved at trial").

Taking all of the *Reed Paper Co.* factors into consideration and exercising its discretion, the Court finds that Tom Hazelrigg was a managing agent of Centurion for purposes of discovery.  The undisputed facts demonstrate that he exercised judgment and discretion in the transaction underlying this lawsuit.  He clearly identifies with the interests of Centurion.  As to whether there was any individual of higher authority, the facts demonstrate Tom was the one calling the "shots" concerning this transaction.  He was responsible for determining whether SDC was a viable buyer; the terms of the sale; negotiating the crucial second amendment to the PSA; the rate of the loans; and the bank making the loan.

Furthermore, whether Tom is currently a managing agent is not relevant to the Court's inquiry. *Dubai*, 2002 WL 1159699 at *3-4 (Courts accord managing agent status to individuals who no longer exercise authority "so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests."); *Libbey Glass, Inc.*

---

[5] Whether the testimony is admissible is governed by Fed.R.Civ.P.32(a)(2).

*v. Oneida, Ltd.*, 197 F.R.D. 342, 350-51 (N.D. Ohio 1999) ("the deponent need not be associated with the corporation at the time of his deposition").[6]

The Court would also note that there is a confidentiality order in place (Doc. 30 ) that protects the disclosure of financial information of not only the parties but third parties as well.

*Written discovery.*

Interrogatory No. 5 and Request for Documents Nos. 9 and 10. Interrogatory No. 5 seeks a listing of all commercial buildings that Tom, or entities that he controls, have owned since 2000. Request for Production No. 9 seeks Tom's resume or other description of his work history. Request for Production No. 10 seeks financial statements or other documents containing schedules of real estate owned by Tom. Centurion objects on the grounds that Tom is not a party or a principal, the requests invade his financial privacy and the information sought is not relevant.

Centurion's objections are overruled. As discussed above, there is evidence that Tom was a managing agent of Centurion, and thus the information sought is reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs will answer Interrogatory No. 5 and produce any of the requested documents in its possession and control, but only for the period of January 2004 through December 2007. In addition, the Court will limit the response to Request for Production No. 10 to those portions of financial statements or documents that contain schedules of real estate owned by Tom during the same time frame.

Request for Production No. 6. This request seeks all documents that depict, describe or reflect the relationships between Centurion and CFG. Centurion objects to this request on the grounds that CFG is now owned, managed or otherwise controlled by Centurion.

---

[6]The Court is aware there is contrary authority but finds that the weight of authority supports the Court's findings.

For the same reasons as stated herein, Centurion's objections are overruled.

<u>Request for Production No.16.</u>  This request asks for all documents regarding any donation of money goods or services to Governor Richardson or any member of his staff.  Tom has touted his favorable relationship with the Governor saying the Governor flies in Tom's jet around the country.  The Court will sustain Centurion's objection.  The information sought is not reasonably calculated to lead to the discovery of admissible evidence.

<u>Request for Production No. 20</u> requests all documents relating to efforts to sell any of the four buildings.  The Court overrules Centurion's relevancy objection.

<u>Interrogatory No. 4</u>.  This interrogatory seeks information about who owns and has owned equity interests in Centurion.  Centurion responded with information about the dates on which Aaron and Jay Hazelrigg obtained their current ownership interests.  SDC is entitled to find out whether some or all of that ownership interest was ever obtained from Tom Hazelrigg and thus overrules Centurion's objections.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel is granted and Defendant may depose Tom Hazelrigg as a managing agent of Centurion Silver, LLC, Centurion Southwest, LLC, and Centurion Pacific LLC.  Plaintiffs will make Mr. Hazelrigg available for a deposition in Albuquerque on a mutually agreeable date.  If Plaintiffs are unable to produce Mr. Hazelrigg for a deposition in Albuquerque, Plaintiffs will pay all costs incurred by Defendant in taking the deposition in Seattle or elsewhere.  Any Notice or Subpoena Duces Tecum regarding the deposition should specify the areas of inquiry and the documents Mr. Hazelrigg is to bring to the deposition in accordance with the applicable Federal Rule of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiffs will respond to the written discovery as described above within fifteen (15) days of entry of this Order.

*[signature]*
**ALAN C. TORGERSON**
**United States Magistrate Judge**